Case number 23-1050. Corey Smith v. Cmsnr. Ms. Farmer for the appellant. Mr. Wasserman for the appellee. Mr. Harris. Ms. Farmer, you may proceed when you're ready. I stand here before you today representing Mr. Corey Smith, who seeks to disavow his legal positions. He previously advanced these positions by being highly influenced by Mr. John Castro, who, as you are probably aware, has been convicted of fraud. And Mr. Castro represented himself out as a tax attorney. He was never licensed to practice law. My client and myself are aware that this is a very unusual situation and that you're really not supposed to come and change your position at this time. But he asked for the court to take into consideration that the only reason he advanced these arguments was Mr. Castro's contract with him that required him to this issue to his satisfaction to receive any of the fees back. Ms. Farmer, I want to thank you for being here and also thank you for the candor and the transparency. When you say that Mr. Smith disavows, it seems to me like that's similar to saying that Mr. Smith is abandoning the arguments. And I think my question for the government is going to be, why wouldn't we just issue a judgment saying the arguments have been abandoned, they're therefore forfeited, and that's the end of the case? I understand the government won't get the advisory opinion from us that they might wish to use in future cases, but that's not really our role. That sound right to you? Um, we don't ask that that happen. We do really actually would also stand with the government that there probably is purpose in having this judgment because there are so many pending cases and other people who have been affected by Mr. Castro. So we're not asking for there not to be a ruling in this matter. If there's any possible way for there to be one, there's been an amicus, this has gone so far. Everybody's expended time, finances, you know, to get it to this point. So whatever works best for everyone is good. You're basically asking to voluntarily dismiss the appeal. Yes, and we understand that the appeal was requested to be dismissed and the court rightfully denied that because of the advancement of the case and the matters pending before it. And so we don't disagree with that and think that that was the right decision because going back through and seeing how many people have been fraudulently impacted by Mr. Castro and are still in litigation at this point and the way Mr. Castro is handling these cases, having the clients go pro se and filing these himself, he logs into their accounts and files them. Wait, what? Yes. He logs into their Pacer account and files the pleadings. Under their login identification? Yes. Yeah. I just found that out two days ago. So as soon as he, Mr. Castro realized he's in so he's not up to date with everything going on here and he did not actually find out that Mr. Castro was indicted until Mr. Wasserman put an objection to Mr. Castro's motion for leave to file an amicus brief. So after that point, he tried to remove himself from this litigation and that's why he hired me and my firm to help him do that. Okay. All right. Thank you.  Good morning and may I please the court. Carl Wasserman on behalf of the commissioner. I want to address Judge Walker's question to Ms. Farmer. Mr. Smith did in fact put in a motion to withdraw this appeal. We objected to that. It was not stipulated and there are at least 14 other cases that are pending in the tax court that are directly stayed because of this case. Mr. Smith was the first case to be filed promoting the positions that he took in this case and although I understand that he now has abandoned these arguments, he does have affidavits in this case. There is a record in this case and many of the other cases in the tax court are going to depend on this, what the court decides in this case. Mr. Wasserman, I understand it and I don't blame you for wanting us to do more than dismiss the appeal on the grounds either that the arguments have been abandoned or that, but the adversarial process exists for a reason. The idea, I know you know this, but the idea is that we will do a better job in figuring out the right answer to a legal question if there's adversarial presentation. I don't think I've ever seen a case where there's less adversarial presentation, especially after Ms. Farmer's very thoughtful comments and understandable comments. I don't blame Mr. Smith for being mad at Mr. Castro, but in part for the reason that you want us to reach the merits, I'm cautious to reach the merits because this will affect, if we issue a published opinion reaching the merits, this will control future cases and those future cases may wish to present adversarial, you know, may wish to have an adversarial presentation and we might get the answer wrong. We might be more likely to get the answer wrong now than we would later if a later case has adversarial presentation. I understand, Judge. Of course, my friend, your own appointed attorney has also done a lot of work in this case. He's not against you either. As well, he should not be because the government is correct in this case. I do want to emphasize something and I think it is important. Forty years of work has gone into this Pine Gap arrangement. It is carefully thought out between the IRS and the Australian tax authorities. It was designed to provide American taxpayers who in smack in the middle of Australia in the Pine Gap facility with a tax benefit. It provides them simply by filing a closing agreement. This was Mr. Smith's closing agreement. It's four pages. By filing that closing agreement, you get the benefit of American taxes, which are lower than exclusion. You don't have to pay Australian taxes. They don't take Australian withholding from you. You don't even have to file a tax return. This four pages does a lot of work. I would tell you, Your Honor, that there are hundreds of these agreements that are currently in use. You can get off the website. My understanding has been all those decades, that well, not all those decades, but it's been a long time and it's worked and that Mr. Castro, if I'm understanding correctly, is behind not only Mr. Smith's now terminated effort to challenge it and behind the efforts of the other cases that you mentioned that are coming up through the tax court. Your Honor, as far as I know, there are other petitioners in the tax court who have independent counsel. There are some who may be simply pro se. I do know that, as far as to my knowledge, all of those cases were stayed pending Smith. Now, there was one other case that was in the Court of Federal Claims and we filed a notice of recent decision with you about that case. And I wonder if it's appropriate if the IRS is in touch with people to notify them of what's gone on with the proponent of the theory on which they now rely. Well, I think, as you said, Your Honor, this program has worked and I think that I'm hoping that, again, depending on whether or not this court does issue a decision or waits for another possible case, that the world will get out that these agreements, just as Judge Toro, and he wrote a very thoughtful decision here, he said it was beyond question, those are his words, that these agreements were properly authorized by the IRS, that they were not improperly obtained by the IRS. It's a small agreement, but it does a lot of work. And I think even though, as I said, Mr. Smith has conceded that his closing agreements were binding, and I think we're going to hear that from the amicus, we'll take the same position. I understand everyone's singing from the same hymnal here, but at the same time, if there is a live controversy, and again, we did not, court did not deny the motion to, excuse me, the court did not grant Mr. Smith's motion to withdraw, I think this would be a good opportunity for the court to rule. I'd be happy to answer any questions if you have any. If I recall correctly, in this case, the tax was paid and the taxpayer is seeking a refund, is that correct? Well, no, your honor, he received a refund because, exactly, now the refund was frozen, but he received a refund because what you do when you tax returns, if you live in a foreign country and you claim the exclusion, then they would see that you have this section 911 that we've briefed, then you would deduct that from your income. What Mr. Smith and all the others are required to do is file a copy of this closing agreement saying, I'm not allowed to take the waiver. So when the return was processed by service, they saw that he claimed this exclusion and they reduced his income down to zero and refunded him the money. They refunded the money, but it's frozen? Correct. In other words, you have access to it. That's correct. And the IRS will be made whole in light of Mr. Smith's current position with respect to Mr. Smith's case. That is my understanding. Is that true of all the cases? All the 14? I believe so, because if I understand correctly, no one who filed a tax return, they all claimed this exemption and none of them filed a copy of their closing agreement, which would have indicated to anyone who examined the returns that they were not entitled to take. And all refunds, if there were refunds, have been frozen? As far as I know, I can't say for sure, I don't believe they were issued because I believe one of the requirements was that they were frozen, but I don't know for a fact. But I know refunds were issued. I'll take one more shot and ask for your help just as I think through the question that I started out with. We don't have jurisdiction to issue an advisory opinion. I'm not saying that we lack jurisdiction. I'm not saying that we're in that place. But it feels a lot like you're asking for an advisory opinion. And can you do anything to swage that concern? Well, Your Honor, I mean, the rules do say that if you're going to dismiss a case at this point, that it be stipulated. And I understand we can't stop someone from coming up here and saying that they abandoned the case. That said, again, the fact that there are affidavits, does he say that I didn't mean what I said in my affidavits? Those are sworn. Does he say that? As far as I know, he's not saying I'm lying. So he put things in dispute. The case is fully briefed. I hear your point, Your Honor. But if he's abandoning his claims, I take it that the service would not have any basis on which to refuse to stipulate, any substantive basis. I mean, I understand your interest in terms of the development of the law. But in terms of the concrete interest in this dispute, I think it's hard to see what. Let me offer one other possibility. When people take positions for the service, sometimes there are penalties for negligence. I accidentally, you know, I did the wrong thing. Sometimes there are willful penalties that a person should know better. And I think this might be an opportunity that people should be in a position where they do know better. Penalties may be on the line, whether it's in this case or future cases, that I think would strengthen the service's position if this court does render a decision in the government's favor. If they have not been sought, then that would have to, I think those issues would have to arise when and if they were sought. Yeah, and as far as I believe, there are such penalties in some of the tax cases that are currently being stayed. And as I said, I think that would be one other sort of hook if the court were going to render a decision. Thank you, Your Honor. None's been assessed in this case. I'm sorry? No penalty's been assessed. In this case, Your Honor, because I think, like I said, we froze his refund, so we have it back in this case. I was simply saying that in future cases, if a decision comes from this court upholding these agreements, then if someone else will come along and say, I had the right to do this, it would strengthen service's position to know that there is binding law that these agreements are valid. Thank you, Your Honor. Mr. Harris, we invited you to participate. Yes, good morning, Your Honors. Well, Your Honors, I'm happy to address whatever issues the court would find useful, but I'll start with yours, Judge Walker, about the adversarialness of the proceeding. Now, I'm cognizant of the concern expressed by the court that we lack adversarial proceedings here, and I think there's two questions with respect to that. Before we get into the merits, obviously, we didn't brief this, but just to raise them for the court, one is an Article III question, does the court have jurisdiction? And here, Mr. Smith is aggrieved by a judgment below, issued by the tax court, and in terms of pure adversarialness, does he have an interest in reversing that judgment? The answer is probably yes for purposes of Article III, although we'd be happy to file a letter brief to that effect if the court would find it useful. Now, the broader issue is, has there been a concrete presentation of adversarialness for the issues in the case? We think the answer is no, given Mr. Smith's arguments here today. And so the question is, under federal rule of appellate procedure 42, whether this court should voluntarily dismiss appeal, or issue an order dismissing the appeal, deeming Mr. Smith's arguments forfeited. There are circumstances in which federal courts of appeal have refused to dismiss cases under rule 42, but those circumstances don't appear to apply readily to the circumstances here. I'll just direct the court's attention for reference to United States v. State of Washington Department of Fisheries, that's the Ninth Circuit case from 1978 at 573 F. 2nd 1117, and there the court, then Judge Kennedy, was expressing a concern about gamesmanship. I mean, what you don't want is a party to appear at oral argument, see which way a court of appeals is going, and then abandon claims in order to obtain a ruling that, in order to avoid obtaining a ruling that would steer the law in a particular direction. And I take that point, I understand up to a point. It is pretty common for argument to ask for concessions, and when those concessions are made, you know, we, I think we view that as a significant purpose of the oral argument, and here, you know, not only has one argument been conceded, but all of the arguments have been conceded. I hear that, I hear that, your honor. I think this is an unusual situation that goes beyond just conceding one point or one argument that would help sharpen the legal issues before the court, and here Mr. Smith has obviously abandoned all of his arguments and doesn't appear to seek reversal. I would, I might be less worried about going as far as the government wants us to go if some of the legal issues weren't at least a little bit tricky. I mean, the question of whether scienter is part of what we analyze if there's a misrepresentation in an agreement like this seems not incredibly easy legal question, and it seems like it could have pretty far-reaching consequences, and hard legal questions with far-reaching consequences are exactly the kind of questions that we benefit the most from a true adversarial presentation. Of course, agreed, your honor, and I think obviously here, you know, the legal questions were complicated enough to warrant the appointment of a friend of the court, so, you know, that that's maybe one more point in favor of waiting for a case in which the legal issues are sharpened Do you think we could use your very nice brief in a future case that raises this issue? Would the court be able to, I mean, I think the answer is yes, we could read it, we could consider it, we wouldn't have to appoint you or someone else all over again to say the exact same thing. I think that's probably right, and I'll represent that I'm happy to appear again if the court would find it useful to speak to the merits issues in the briefs. We appreciate the offer, and I assume also that Mr. Wasserman will be able to cite to this brief as a document of public record if and when these other mentioned appeals from the tax court are pursued. I think that's right, Judge Pillard, and the only thing I would say is on the misrepresentation point coming back to your point, Judge Walker, there's, you know, obviously three different paths to resolving the misrepresentation issue before the court. One is the tax court's route of saying statements of foreign law cannot be statements of fact. One is the government's proposed test, which would impose an intent requirement. As we point out in our brief, there are cases going back to the 1930s, Ingram versus Commissioner, that impose that intent requirement, but it's not entirely clear how you get to that from the statutory text, and so we've proposed a third route, which is that a statement of law can be a misrepresentation of fact so long as it's clearly and demonstrably erroneous, given that statements of law are sort of like opinions. It's the United States is making representation that it believes foreign law to mean a certain thing, and in that context, we think in order for that to rise to a misrepresentation, there needs to be some showing that reasonable minds couldn't differ about the meaning of law, and after all, closing agreements are supposed to settle uncertainty about the meaning of law. So that's our position. One thing that we might do if we had a case before us is agree with your powerful advocacy, and actually Mr. Smith's advocacy, that statements of foreign law are statements of fact, and see what the tax court, as the expert in the standards for in this context, would say in light of that. So it may not just be our court that could have the benefit of your brief, but perhaps the tax court, if it has any more of these cases to process, but I know you were appointed by the court, and we're very appreciative of you and your colleague, Ms. Consra, being here today. Your brief was very able, and it's a generous assistance to the court, so we thank you for that. Thank you, Your Honors, our pleasure. All right, and I trust that Ms. Farmer, nothing further? I don't think I said it verbatim, but there were penalties in this case. So for two years, he did receive a refund, and the contingency agreement was 50% of the refund paid to Mr. Castro. He has since made the IRS whole. He's paid all penalties, so there are penalties and interest. He's paid all of those, and then the last year was frozen. Two more years after that are in a different matter, and they're still in the tax court, but he's paid all of those, and they are drawing up a stipulation to end that also. Thank you. Thank you. The case is submitted.
judges: Pillard; Walker; Ginsburg